The next case, United States v. Cota-Medina, No. 21-2063. May it please the Court, I knew there was a front. May it please the Court, Angelica Hall here, arguing on behalf of Mr. Cota-Medina, defendant appellant. Mr. Cota-Medina request that this Court reverse and remand his case for an error-free consideration of his motion to renew, his renewed motion to reduce his sentence. That would be based on an accurate assessment of the benefits of the plea agreement, based upon an application of the rents case, and also the correct sentencing parameters. That would be an accurate consideration of both the statutory penalties, as well as the guidelines applicable guidelines to count three and count four, which were dismissed. Had the Court considered the benefits of the plea agreement absent these fundamental errors of law and clearly erroneous facts, then it would have known that the plea agreement resulted in no benefits. The benefits were illusory. Instead... But didn't the benefits avoid the charge of the drug counts? Your Honor, the Court does discuss the dismissal of count three. And the Court, when it looked at the benefits analysis, it made a couple of errors. And I know that the government has... Well, it made an error, but then it corrected it in the footnote later. Your Honor, the Court... Let's put that error aside. Let's talk just about what you believe would be the error about the drug counts. Your Honor, the error is both what you've just mentioned here. The government would qualify that as a Scribner's error, but that's not the case. What we know is that the Court was relying on the pre-sentence report, and in that it said that count three had a 20-year imprisonment sentence. It didn't specify up to or a maximum. No, but in the footnote it was clear. And, Your Honor, I think that both this contradiction, what was in the brief and the content of the body of the brief and what was in the footnote, that contradiction is a reflection of the Court's misunderstanding of the actual penalties associated with count three. The count three also, if we look at the guidelines, and this Court has said numerous occasions that the benchmark for proper sentencing on any case is to look at the guidelines, it would have seen in 2005 the guideline application to count three would have merged, would have grouped as a related conduct with count one and would have resulted in no increase in the advisory guideline range. That is significant. The Court has a perception that there is a huge benefit here. At one point it talks about a 20-year, and then it does its own calculation of the plea agreement resulted in a reduction that Mr. Cotomedino was facing anywhere from 10 years up to 65 years imprisonment. Now, the government has noted in one of its footnotes that that was clearly erroneous, that Mr. Cotomedino was facing a potential life sentence under the statutory penalties. However, we know that that's not, there was no one talking about a life sentence for Mr. Cotomedino. We look to the guidelines to discuss what is the heartland of cases. What are the cases based off of the offense and the seriousness of the defendant's criminal history? We look at those guidelines. When the Court did its original sentencing, it looked at the guidelines for count one and it determined that the high end of the applicable guidelines, the 135 months, was the appropriate sentence for Mr. Cotomedino on count one. We look at count three, which is based on the same underlying conduct. We know that in 2005 the guidelines talked about that. The grouping of facts, I'm sorry, the grouping of counts based off of related conduct. That would have resulted in no additional increase in a possible, in the advisory guideline range. So even just taking into account count three, the benefit of a dismissal of count three was truly illusory. Mr. Cotomedino would have been facing the same possible sentencing penalty had he pled to count three. The other important part is whether or not the Court actually applied rents to its analysis. There's a little bit of back and forth, but the Court says that it has no cases to abrogate for the rents case. This Court has utilized similar, has used to reduce sentence for the First Step Act or for Compassionate Release. In one of its recent cases, United States v. Brown, it looked at whether or not a court, it was Congress' intent for a court to reapply an error of law when it looked at a resentencing. This Court said no, an error, the Court is not obligated to perpetrate another error. And so there is support, strong support for the Court to have considered the rents case and done exactly what it was thinking of, which was abrogating the benefit to Mr. Cotomedino under the plea agreement. It was improperly charged and it should not have been a basis for the negotiations of the plea agreement. Can you go back through, I'm not quite following your argument on why it was, the benefit that it was discussing and it seemed to understand that was the benefit of the 856 premises charge being dismissed. Assuming that the Court understood that and it seemed to, why again was that an illusory benefit? The Court looks to the sentencing guidelines and it didn't do that in this case. In all sentencing matters under the statutory scheme, we turn to the United States Sentencing Commission to give us where that heartland of cases is. And we know that at the time of the original sentencing, the probation office even said in its PSR that there was no basis for a departure. And the Court in fact gave the high end of the guidelines. So we look at that as to what was going on at the time. The Court talks about the original sentencing. So Your Honor, we don't just consider the statutory minimums and maximums when we're looking at a benefit here. Even if we did, we know that the Court erred. And it was clearly erroneous because it was not considering the true statutory maximum that Mr. Cota Medina faced at the time of his plea. It did understand the true statutory maximum. Your Honor, it did not for count two, which was the 924C count. It said that there was, the range was 10 to 65 years. The government has conceded in its brief that it is actually a life sentence. There's an error there. It's clearly erroneous. It's one of the many factors that the Court was considering for its consider the statutory penalties and looked at the guidelines that would have determined that there was no benefit. Which count did you just say the government incorrectly argued was a life sentence max? That was as to count two, Your Honor. Count two carried a mandatory, count two was the 924C count. It's the first possession of firearm count. Correct, which carried a five-year mandatory minimum and a statutory possible sentence. You say the government argued that that was a mandatory life sentence? No, Your Honor. The government clarified that the District Court was incorrect in its assessment. It said that it was a five-year mandatory minimum. And it did not also conclude that it was a possible life sentence at the high end of the statutory maximum. So we have a lot of error in its analysis of the benefit of the plea bargain. Had it done a correct analysis of both the statutory possible penalties as well as the guidelines, it would have seen there was no benefit in light of the rents case. Looking at the analysis that this Court has approved for its 3553 factor weighing, one of those is the benefit of the plea agreement. Here there was no benefit. In fact, we have a 45-month upward variance on count two. The guidelines advise that on count two, the 924C that you use the 60-month, that is the mandatory minimum as the guideline sentence. Anything above that is an upward variance. And so when we look at the benefit at the time, in light of the rents case, in light of those guidelines, we identify that there was no benefit. In fact, Mr. Cota-Medina agreed to a sentence that was higher than the heartland of cases. Hindsight is always good. But I'm not following your argument. I'm sorry. The Court held the defendant was eligible for a reduction, but declined to give it. And to say that it was illusory because of the rents case later on is a stretch. I mean, this was an 11C3 plea with counsel, an agreed sentence. And how can he now come up and say, oh, I didn't know it was illusory? Your Honor, the Court... He took everything the Court took, every 3553A factor into consideration. And what's the standard of review here? Your Honor, the standard of review is an abuse of discretion. And the Court abuses its discretion when it relies on an error of law, which is when it didn't apply the rents case. Well, he corrected the one there. It was a misstatement, but he corrected that. It also commits an abuse of discretion when it relies on clearly erroneous facts. Here, when it was discussing count three and the possible penalties, it stated those incorrectly. It also did not consider the guidelines, which is the starting place for all sentencings. And so it did not have an accurate assessment of the benefit of a dismissal of count three. And it also commits an abuse of discretion when its decision is not rationally based on the evidence. And we see here in this 3553 analysis that it did both consideration of the defendant's post-conviction rehabilitation. It also considered the defendant's criminal history and the seriousness of the offense. And then it also, which was probably a very heavy reliance, it was a very heavy reliance on the benefit of the plea agreement, the bargain itself. And that's been permitted by this Court for the Court to consider the benefits there. The problem is that it had a misperception about the benefits. That misperception heavily influenced its 3553A factors. Had the Court conducted its analysis of the sentencing parameters that the defense is discussing, it would have seen there was no benefit. And it would have been able to consider that, just as it had been in the career offender cases under the First Step Act. This Court has precedence for that. The Court could have considered that that was perhaps a basis to adopt the reduction. Your Honor, I see that my I've had the five minutes. I'll go ahead and reserve for rebuttal. Good morning, Your Honors. May it please the Court. My name is Amal Keeney. I'm with the U.S. Attorney's Office in Albuquerque. And I'd first like to address the argument that there was no benefit from the dismissal of count three. And in particular to the argument that was made in the reply brief, which I haven't had a chance to address, that because the guidelines for count one and count three would likely have been the same. And I think that's probably correct, that there was no benefit from the dismissal of count three. And I think the thing that I always try to keep in mind with respect to Rule 11C1C is the purpose of it is to minimize a defendant's risk, at least from the defendant's perspective, as to the sentence that he or she may receive. So this is in 2006 is when the sentencing took place. It's after Booker. If there had been a trial and conviction on all the counts, the district court could have applied a guideline sentence to both counts one and three. But the guidelines are advisory. It might have chosen not to. It might have chosen to vary upward. It might have chosen to run the sentences partially or entirely consecutively. The district court has a lot of discretion in that regard. And of course, I don't know what the district court would have been likely to do back in 2006 if that had happened. But it's a risk that a defendant rationally takes into account when entering a Rule 11C1C agreement. In addition to that, there is that risk. He avoids that risk. But I'm kind of having trouble understanding why there's so much emphasis on whether there was a benefit to an objective years in jail benefit to the defendant. I mean, what if the defendant said maybe I'm not going to get a better deal at all. You're sentencing me to the statutory maximum. I'm agreeing to the statutory maximum. My benefit is I get this off my chest. I get to confess or I don't have to put my family through a trial or I just I'm done with it or I just want to make a clean break. Why is it so important that the government have to prove a benefit? Well, the Supreme Court in Hughes said that that's something that the district court can take into account. But you're still left to the district court's discretion. Of course, the district court can take anything into account. Right. But is it necessary? Does the district court have to? I mean, is the argument that, well, if you don't consider whether it was a benefit, maybe the court wouldn't have to take it into account. But at least there is an abuse of discretion or at least the process is flawed because there's inadequate data to the court and therefore we have to remand. Is that the argument? Right. I think the district court could take it into account or give it no weight. It's up to the district court's discretion. But I think the defendant's argument is that having taken it into account. Because they didn't have the proper analysis. They didn't make a judgment whether to take it into account or not because they had an improper, faulty analysis. The district court? Yeah, that's what the defendant's argument is. That's what the argument is and I disagree with that argument because, as I've just outlined, there are benefits to avoiding the... There is a possibility the defendant could have gotten a higher sentence on count three despite the fact, the grouping rules and the guidelines. Even though they have the same guideline range. The other point is, and it's perhaps a more subtle one, is that since the district court could have... We're here on 3582C motion for sentence reduction and what that statute says is you can only reduce a count of conviction if there's been a reduction in the guidelines. There's been no reduction for count three. So if the district court had given them the same sentence and run those... Then we probably wouldn't even be here because the 135 months would be the same for both and there's no reduction on count one. That's another benefit that he got from dropping count three from the plea agreement.  The other point is, I wanted to clarify what we meant in pointing out that there was a possible life sentence for count two. The district court says, and that's that same footnote on page 18 of volume one of the supplemental record proper, that if count three had not been dropped, the defendant could have been sentenced to 10 to 65 years imprisonment. So it's not counting count four in that. But what we were saying in the footnote is that's a mistake that the district court made because he should have said 10 to life. And you could also consider that as another benefit from the plea agreement, is that maybe it was unlikely that he was going to get a life sentence on count two. But I don't think any defense counsel could tell him with absolute certainty that he wasn't going to get it. And it's also worthwhile to minimize the risk of a sentence like that. Just like I put on my seatbelt when I go in the car, even though the chances of me getting in a wreck might be small on any given trip. But the consequences of it, if I do and I'm not wearing a seatbelt, could be severe. So I think that's another benefit that's in this agreement. I think the district court talked about count four, the dismissal of the 25-year minimum mandatory 924C. And I do think that's probably what was mostly driving the defendant's decision to enter the plea agreement. But the plea agreement also had other benefits that you can consider, even if you set that count four aside. And I think that's what the district court did in that footnote one on that. If you think that the dismissal of count four, the 924C second gun charge, was what motivated, likely motivated the elephant in the room that motivated the defendant, doesn't that cause us to question this keeping the, continuing to hold the defendant to the plea agreement? I mean, if you can say well, but there's a 10% other benefit that he had, the chance of some deviation by the judge, the judge could have done on the safe house or on the drug trafficking, the first firearm case. If you are willing to credit that the plea agreement is suspect if there is no benefit whatsoever, doesn't that make you vulnerable also as to whether it should be questioned if there is a benefit, but a much smaller benefit than he originally thought he had? Right, I think you, I think the district court could have come to that conclusion and said there was a smaller benefit. I mean, 25 years, that's a lot of time. And even though there was a risk of a life sentence on count two, which is also significant. But I think, we don't think the district court, though, abused its discretion in considering those other benefits. The district court set aside count four and said, I still think there's a benefit because of the dismissal of count three. There is a benefit, but is it an abuse of discretion if you factually don't consider actually how important that benefit is? It's not enough to say there's a little benefit or a tiny one. That might not have been enough for the defendant. I mean, nobody would quarrel that the court could exercise its discretion, but you can quarrel with a discretion that is not based on accurate information. Isn't that the question we're addressing here? If the court had inadequate information before it, then even though the court has unlimited discretion, that suspect, because it's not based on a full and accurate factual record, understanding of it, of the record. Right. If the district court had gotten something wrong in its analysis and considering what the benefit was, then that could be an abuse of discretion. Couldn't we remand in that instance? You could. That would be the proper remedy. If you disagree with me, that would be the proper remedy. The other thing I would point the court to, though, is the statement the district court makes on the last plea agreement, the court would likely have sentenced the defendant to the same or a higher sentence than the one ultimately imposed pursuant to the plea agreement. That's in Supplemental Volume 1 of the record at page 20. So I think that what the district court there is saying that, yes, I understood. I'm setting aside Count 3. I think he got a benefit from Count 3. And in addition, he talks about he wasn't impressed with the defendant's history. He said, all of that together leads me to think I would have done either the same or higher without the plea agreement. And I think that's a statement the court can infer that there was a benefit from the agreement because the district court is telling you what it would have done. So for those reasons, unless the court has any other questions, we don't think this meets the high standard for an abuse of discretion. Unless you have any other questions, I'd ask you to affirm that. I'm intrigued about whether we can rely on a court's statement long after the original sentence, this is what I would have done, as binding evidence on whether that made a difference in the court's sentence at the initial sentence. Does the district court even have the ability to transport himself or herself back in time and say, it wouldn't have made a difference to me then because at least right now it wouldn't make any difference to me? I don't know that the district court can say anything that binds this court in that regard. But I think the court can go back because it's required to consider the benefits that the defendant obtained from the plea agreement and considering the 3553A factors, I think that necessarily requires the district court to consider the situation as it was at the time of the plea. I think the district court can also consider things that have happened after the plea, such as the defendant's record in prison, so I'm not limiting it to that. But I think the district court can put himself back and say, this was the record at the time, my mind's not changed, I would have given him more or the same if it hadn't been for this plea agreement. Thank you. Thank you all very much. The government talked about does the court, the court did not abuse its discretion when it considered count four and three, that there was still a benefit. But the government talks about how its decision, its weighing analysis to deny the reduction was based very heavily on what it perceived to be a very generous and a very significant reduction in exposure. It was based on its misperception of a benefit there. And we can see that in its contradictory statements about the statutory benefits and we can see that in that it has not considered that count three wouldn't have added more to this sentence. This is an error that this court should send back to the district court and then it can make its findings, have its input as to what it believes that that benefit of the plea agreement is in light of the proper sentencing structure, in light of the rents case, and in light of the guidelines. And that's what Mr. Cota-Medina is asking this court to do. The government points to the same or higher sentence than the one ultimately imposed. That is based again on its perception about what are the possible penalties for counts three and four. And we know that that again is tainted, its analysis is tainted. And so we have the weighing of other three, five, five, three factors, but this over, this very heavy weighted analysis of the benefit of the plea agreement. Well, the court's statement now wasn't tainted. The court knows what the, I mean, you think the court's impression is still tainted? Yes, Your Honor. It's still tainted because it didn't go to the bedrock of all sentencing, which is we looked at those guidelines. It is tainted because it misconstrued what the possible maximum penalties were to Mr. Cota with and without count three. And so that tainted perception permeated the entire three, five, five, three analysis. So you're saying the tainted perception of the court now, or on this motion, as to the benefit of the plea agreement, particularly as to the maximum sentence, didn't really matter. The whole evaluation was tainted and we should remand it because of that. Thank you. Thank you, counsel. We appreciate your arguments. The matter will be submitted. Counsel are excused.